[Civ. No. 9180.   Third Dist.   Feb. 27, 1958.]

NAPA UNION HIGH SCHOOL DISTRICT OF NAPA COUNTY, Respondent, v. PAUL T. LEWIS, Appellant.

Coombs, Dunlap & Dunlap and Frank L. Dunlap for Appellant.

Daniel K. York for Respondent.

Edmund G. Brown, Attorney General, F. G. Girard, Deputy Attorney General, Harold W. Kennedy, County Counsel (Los Angeles), A. R. Early, Deputy County Counsel, Robert E. Reed and Robert F. Carlson as Amici Curiae on behalf of Respondent.

VAN DYKE, P. J.—This is an appeal from a judgment awarding appellant the sum of $48,000 as the value of 40 acres of land condemned by the respondent. The land taken was part of a larger tract owned by the appellant which contained 245 acres. No issue as to severance damage was presented in the case. There were three value witnesses, two called by appellant and one by respondent. All agreed that the highest and best use of the entire holding, as well as of the land taken, was subdivision for residential purposes. One value witness called by appellant testified that the value of the property taken was $92,000; another witness for appellant testified the value was $116,500. Respondent's value witness testified that the land taken was worth $40,000. All three witnesses testified that, considering the highest and best use of the property, they had arrived at their values by calculating the cost of subdivision and improvement so that lots could be sold for residential purposes. Appellant's witnesses, treating the 245 acres as a unit, estimated the cost of its subdivision and improvement and then apportioned to the 40 acres its share of that cost. By this method they proposed to arrive at a value per lot for the lots that would be produced within the 40 acres and to fix the value of the 40 acres as the total value of the lots. Respondent's value witness estimated the

cost of subdividing and improving the 40 acres as a unit and then by arriving at approximately the same number of lots producible in the 40 acres, and by giving the lots approximately the same value as had appellant's witnesses, arrived at a value, which, as noted, was approximately one-half the value arrived at by appellant's witnesses. It was made obvious by all the testimony that the cost of subdivision and improvement of the 40 acres would be much greater per lot if the 40 acres should be subdivided and improved as a unit than it would be if the whole tract should be subdivided.

Without going into detailed references to the testimony of the several value witnesses, it may be said that this difference in view developed early in the case and was the subject of considerable argument by counsel addressed to the court, and that during the course of the trial the court, adopting the view of respondent, compelled appellant's value witnesses to adjust their testimony to the method approved by the court. The result was to largely destroy their testimony of the value of the land taken. In effect, the case was submitted to the jury in such a way that the jury, in considering the testimony of the witnesses as to value must have discounted the values arrived at by the methods used by appellant's witnesses and must have accepted the values arrived at by respondent's witness. This is reflected in the jury's verdict since the verdict was only slightly higher than the value placed upon the land by respondent's witness. There was no material difference in the estimated cost of subdivision and improvement as to such necessary units as water mains, main sewers and the like, whether the 40 acres would be subdivided and developed alone or in conjunction with the whole tract; and there was not much difference between the testimony of the witnesses as to the value of the lots that would be produced. The result was that, with minor differences not material here, all the witnesses took the gross value of the lots to be produced in the 40 acres but the respondent's witness subtracted therefrom the cost of subdivision and improvement of the 40 acres considered by itself and then arrived at his figure of about $40,000 as the value of the 40 acres. The appellant's witnesses sought to spread over the entire tract the cost of improving the whole, and to then subtract the amount apportioned to the 40 acres from the gross value of the lots to be produced therein, thus arriving at a much higher figure for the value of the land taken.

The principal claim of error advanced by appellant

has to do with the foregoing rulings of the court which, in effect, told the jury that in considering value testimony they were to adopt the view of respondent and the theory on which the value of respondent's witness rested. We are convinced that respondent's view was wrong and that in following it the court fell into prejudicial error with the result that the trial was not fair to appellant and the judgment must be reversed.

Nichols on Eminent Domain, volume 4, section 14.1(3) contains the following statement of the appropriate rule on the issue here:

". . . It has been held that in determining the value of the part which is appropriated, the value of such part may not be considered as if it constituted an entire tract separate and apart from others in the possession of the same owner. If, as a matter of fact, the parcel taken is part of a larger tract in the same ownership it must be so considered and any increased value which inheres in it as part of a larger tract must be reflected in the award."

The text cites in support of its statement *Yolo Water & Power Co.* v. *Hudson,* 182 Cal. 48 [186 P. 772]. We quote again from Nichols on Eminent Domain, volume 4, section 14.1(2):

". . . The owner is not limited to recovery of the value of only that part of the tract which was physically appropriated. The entire tract is considered as a whole and the effect of the condemnation and the projected use evaluated so that determination can be made of what he had prior to the proceeding and what he had left thereafter."

Counsel for respondent argues here as he did in the trial court that to permit appellant's value witnesses or the jury to consider value arrived at by unitary development of the entire tract would be to permit appellant to recover severance damages which were neither pleaded nor asked during trial. A very similar contention was made in *Yolo Water & Power Co.* v. *Hudson, supra,* at page 54, from which we quote:

"Appellant claims that double damages were assessed against it for the reason that the jury was permitted when assessing the value of the lands taken to consider the value of such lands arising from their availability for use in conjunction with the lands not taken, and, on the other hand, when assessing the damage caused by severance to the lands not taken it was permitted to consider the value of such lands arising from their availability for use in conjunction with the lands taken. Appellant's argument in this behalf is based

upon the obvious fallacy that the value of the lands taken resulting from the possibility of their use with the lands not taken is identical with the value of the lands not taken resulting from the possibility of their use with the lands taken. These respective values are, however, wholly separate and independent, and appellant was not subjected to double damages by reason of the fact that the jury was allowed to consider each of these values as separate and distinct from the other. Appellant's complaint on this score is unique and original. So far as we are aware a similar contention has never been before urged in a court of last resort.''

The rulings of the court also prevented effective proof by appellant of the availability of the land taken for its highest and best use. Testimony as to any facts showing the nature of the land in controversy and its adaptability for subdivision for residential purposes was admissible. (*Sacramento etc. R.R. Co.* v. *Heilbron*, 156 Cal. 408, 411 [104 P. 979].) It was competent for appellant to show how much it would cost to put the property to its highest and best use and to demonstrate to the jury the quality of the land for that use, thus supporting his value witness's ultimate valuations of the land taken. In doing that he was not obliged to treat that land alone.

█ The rules for determining value of land taken by condemnation cannot, from the nature of the case, be inflexible. In each case just compensation is the goal; and where a rigid application of even a settled rule will produce injustice it must be departed from so far as made necessary by the circumstances of the case. Respondent argues that the land taken must be considered alone as if so offered in the market. The fallacy of this contention is easily exposed. What market value would a 40 foot strip of land, through a mile square tract, have if its value was to be computed as if it stood alone? Obviously none. It would be useless and hence valueless.

In view of what has been said, we think it unnecessary to discuss the remaining contentions advanced by the appellant as grounds for reversal of the judgment.

For the reasons given, the judgment is reversed.

Peek, J., and Schottky, J., concurred.

A petition for a rehearing was denied March 27, 1958, and respondent's petition for a hearing by the Supreme Court was denied April 23, 1958. Gibson, C. J., Traynor, J., and Spence, J., were of the opinion that the petition should be granted.